UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
:
JAIME DEJESUS,                                                    :
:
                             Petitioner,       :        22-CV-7212 (JMF)
:
     -v-                                                          :
:        OPINION AND ORDER
MARK ROYCE, *Acting Superintendent, Green Haven*                  :
*Correctional Facility*,                                          :
:
                             Respondent.       :
:
------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       Jaime DeJesus was convicted of murder in the second degree after a jury trial in New York Supreme Court and sentenced to an indeterminate term of imprisonment between twenty-five years to life. He now petitions, pursuant to 28 U.S.C. § 2254, for the writ of habeas corpus. *See* ECF No. 1 ("Pet."). In his Petition, DeJesus argues that (1) the trial court erred when it admitted certain identification testimony without an evidentiary hearing or additional foundation testimony; (2) the trial court erred when it admitted historical cell site evidence obtained without a warrant; (3) the trial court erred when it admitted graphic photographs of the victim's injuries; (4) his counsel was constitutionally ineffective for failing to challenge the prosecution's evidence and investigate exculpatory leads; (5) he was denied due process on account of prosecutorial misconduct; (6) he is legally, factually, and actually innocent; and (7) his sentence was excessive. *See* Pet. 27-31; *see also* ECF No. 25 ("Resp't's Mem."), at 3-4. For the reasons that follow, DeJesus's Petition is dismissed.

**BACKGROUND**

In 2013, DeJesus was arrested and indicted by a grand jury on several charges relating to the death of Alexis Rodriguez, including second-degree murder. Resp't's Mem. 2, 6. The proof against him at trial included surveillance footage of the murder and call detail reports and historical cell site data for DeJesus's cell phone. *See id.* at 4-9. In addition, the trial court admitted identification testimony from Natalie Ramos, who was standing next to the victim at the time of the murder, *id.* at 21-22, and from Ashanty Rodriguez, the victim's sister and DeJesus's acquaintance, albeit with an instruction to the jury that she "was only giving [her] opinion" that DeJesus was the person depicted in the surveillance video, *see id.* at 25; *see also People v. DeJesus*, 143 N.Y.S.3d 356, 356 (1st Dep't 2021). DeJesus did not present any evidence in his defense. *See* Resp't's Mem. 9. On November 19, 2015, the jury found DeJesus guilty of murder in the second degree, and the trial court sentenced him to an indeterminate term of imprisonment between twenty-five years and life. *See id.* at 3.

DeJesus appealed to the Appellate Division, First Department. *See DeJesus*, 143 N.Y.S.3d at 356. As relevant here, DeJesus argued that the trial court had erred when it had (1) admitted Ramos's and Ashanty Rodriguez's identification testimony without an evidentiary hearing or additional foundation testimony; (2) admitted historical cell site data even though it had been obtained without a search warrant; (3) admitted graphic photographs of the victim's injuries; and (4) allowed the prosecutor to make "repeated inflammatory comments" during summation. ECF Nos. 25-1–25-6 ("Resp't's App'x"), at A38-83. DeJesus also argued that his indeterminate sentence of imprisonment between twenty-five years and life was excessive. *See id.* at A84-85.

By opinion dated March 23, 2021, the Appellate Division affirmed. First, the court held that the trial court had "properly denied [DeJesus's] motion for a[n evidentiary] hearing regarding [Ramos's] identification testimony," noting that Ramos's "viewing of a surveillance videotape of the crime, at which she was present, and identification of [DeJesus], whom she had known for years from the neighborhood, as the shooter, did not constitute an identification procedure within the meaning of [New York Criminal Procedure Law ('CPL')] 710.30," which requires pretrial notice of certain identification testimony. *DeJesus*, 143 N.Y.S.2d at 357. The court also held that DeJesus had failed to "establish any basis for excluding [Ashanty Rodriguez's] testimony" and that there was "no error in . . . allowing [her] to express an opinion." *Id.* at 357-58. Second, the court declined to review DeJesus's arguments regarding the historical cell site data on the ground that he had failed to preserve them in the trial court. *Id.* at 358. In any event, the court held, "any error was harmless in light of the overwhelming direct and circumstantial evidence, derived from multiple sources." *Id.* Third, the court held that the photographs of the victim "were relevant to establish the victim's injuries and . . . that the victim was shot at close range," and that, in any case, "there was nothing depicted in the photos, or stated in the prosecutor's summation, that was so inflammatory as to require reversal." *Id.* Finally, the court stated that it "perceive[d] no basis for reducing the sentence." *Id.* DeJesus then unsuccessfully sought leave to appeal to the Court of Appeals. *See* 37 N.Y.3d 964 (2021); *see also* Resp't's App'x A198-211.

DeJesus then moved to vacate his conviction pursuant to CPL § 440.10, claiming actual innocence, ineffective assistance of counsel, and prosecutorial misconduct. *See id.* at A264-68. In support of his claim of actual innocence, DeJesus submitted affidavits from Lester Classen, DeJesus's half-brother who was also arrested as a suspect in the murder case, and Gervacio

Rosa, Classen's cousin whose house was searched by the police during its investigation of the murder. *See id.* at A541-44. Classen's affidavit stated that Classen and DeJesus had been in Classen's apartment at the time of the shooting. *See id.* at A541-43. Rosa's affidavit stated that police officers had "entered [his] home" and his wife's apartment "without showing [him] a warrant for anything" and recovered a wallet that was left at his wife's apartment. *Id.* at A544. In response, the People submitted an affidavit from DeJesus's trial counsel stating that, "had [Classen] informed [him] of an alibi, [he] certainly would have investigated that alibi." *Id.* at A574. With respect to the claim of ineffective assistance of counsel, DeJesus argued that his trial attorney had failed to interview Classen (who would have provided alibi evidence); failed to point out an inconsistency between the 911 caller's description of the shooter and the surveillance footage; failed to seek a missing-witness charge for Jeremy Colon, a witness to the murder who had initially denied that he knew the shooter but later identified DeJesus; failed to retain a cell site expert who would have explained that DeJesus had lived in the neighborhood at the time; and failed to challenge the wallet's chain of custody. *See id.* at A265-66. Finally, with respect to his claim of prosecutorial misconduct, DeJesus argued that the prosecution presented false testimony by Terence Munnelly, a detective who had claimed that the wallet was recovered from DeJesus's person during his arrest. *See id.*

In a written opinion dated April 18, 2023, the New York Supreme Court denied DeJesus's motion without a hearing. *See* Resp't's App'x A579-87.[1] The court rejected DeJesus's claim of actual innocence, noting that DeJesus had "fail[ed] to demonstrate why the

---

[1] DeJesus filed his Petition here while his CPL § 440.10 motion was still pending. Accordingly, the Court granted his request for a stay pursuant to *Rhines v. Weber*, 544 U.S. 269, 278 (2005). *See* ECF No. 9. On January 23, 2024, after the Appellate Division denied DeJesus's appeal from the New York Supreme Court's denial of his CPL 440.10. motion, the Court granted DeJesus's motion to lift the stay. *See* ECF No. 19.

alibi information could not have been discovered before trial by the exercise of due diligence" given that "Classen [had been] intimately involved with the case from its inception to the resolution" and that, in any case, the affidavit "lack[ed] any indicia of credibility." *See id.* at A583-84. The court also rejected DeJesus's claim of ineffective assistance of counsel on the ground that Classen's affidavit had "not [been] mentioned to defense counsel," any evidentiary inconsistency would have been apparent to the jury, trial counsel had maintained a "continuing objection" to the prosecution's testimony about historical cell site data, and the "failure to request a missing witness charge or to vigorously challenge Munnelly's testimony regarding the wallet [was] not central to the question of the defendant's guilt or innocence." *Id.* at A586-87. The court did not address the wallet evidence as it related to DeJesus's claim of prosecutorial misconduct. Thereafter, DeJesus moved for leave to appeal to the Appellate Division, *see id.* at A588, and his motion was denied, *see* Resp.'t.'s Mem. 3.

## APPLICABLE LAW

The Court's authority to grant the writ of habeas corpus is sharply limited by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Cruz v. Superintendent*, No. 13-CV-2414 (JMF), 2016 WL 2745848, at *5 (S.D.N.Y. May 11, 2016). Specifically, the Court may grant the writ "with respect to any claim that was adjudicated on the merits in State court proceedings" only if (1) the state court's denial of the petitioner's claim "resulted in a decision that was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States"; (2) the state court's denial of relief "resulted in a decision that . . . involved an unreasonable application of[] clearly established Federal law, as determined by the Supreme Court of the United States"; or (3) the state court's

5

denial of relief "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

It is well established that a state court decision can be "contrary to" Supreme Court precedent in either of two ways: first, "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or, second, "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Court's]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court unreasonably applies clearly established precedent "if the state court identifies the correct governing legal rule" from the Supreme Court's cases "but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* at 407. Alternatively, "a state-court decision . . . involves an unreasonable application of [Supreme Court] precedent if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.*; *see also Richard S. v. Carpinello*, 589 F.3d 75, 80 (2d Cir. 2009).

Notably, "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams*, 529 U.S. at 410. That is, the issue is not whether the state court committed error, or even clear error, but "whether the state court's application of clearly established federal law [as determined by the Supreme Court] was objectively unreasonable." *Id.* at 409; *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."). That threshold is "substantially higher" than incorrectness. *Renico v. Lett*, 559 U.S. 766, 773 (2010). Specifically, where AEDPA applies, federal habeas relief is precluded "so long as 'fairminded jurists could disagree' on the correctness of the state court's

6

decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Put differently, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citations omitted).

As noted, a federal court may also grant habeas relief under AEDPA if the state court's decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). But a state court's factual determinations are "'presumed to be correct'" and may only be rebutted "'by clear and convincing evidence.'" *Parsad v. Greiner*, 337 F.3d 175, 181 (2d Cir. 2003) (quoting 28 U.S.C. § 2254(e)(1)); *accord Bierenbaum v. Graham*, 607 F.3d 36, 48 (2d Cir. 2010). This requires "substantial deference" to the state court's determinations. *Brumfield v. Cain*, 576 U.S. 305, 314 (2015). "If reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's determination." *Id.* (cleaned up). Nor may a federal court characterize a state court's decisions as unreasonable "merely because [it] would have reached a different conclusion in the first instance." *Wood v. Allen*, 558, U.S. 290, 301 (2010). That said, "'even in the context of federal habeas, deference does not imply abandonment or abdication of judicial review,' and 'does not by definition preclude relief.'" *Brumfield*, 576 U.S. at 314 (quoting *Miller-El v. Cockrell,* 537 U.S. 322, 340 (2003)).

**DISCUSSION**

As noted, DeJesus makes seven arguments in his Petition: that (1) the trial court erred when it admitted certain identification testimony without an evidentiary hearing or additional foundation testimony; (2) the trial court erred when it admitted historical cell site evidence obtained without a warrant; (3) the trial court erred when it admitted graphic photographs of the victim's injuries; (4) his counsel was constitutionally ineffective for failing to challenge the prosecution's evidence and investigate exculpatory leads; (5) he was denied due process on account of prosecutorial misconduct; (6) he is legally, factually, and actually innocent; and (7) his sentence was excessive.  *See* Pet. 27-31; Resp.'t's Mem. 3-4.

The Court will address each argument in turn.

**A. The Improper Admission of Evidence Claims Fail**

First, DeJesus's challenges to the trial court's admission of Ramos's identification testimony without holding a hearing pursuant to *United States v. Wade*, 388 U.S. 218 (1967), *see* Pet. 21-27, and Ashanty Rodriguez's testimony without having her testify at a hearing held pursuant to *People v. Rodriguez*, 79 N.Y.2d 445 (1992), *see* Pet*.* 24-30, both fail.  Under New York law, trial courts are not required to hold a *Wade* hearing concerning "confirmatory identification" testimony by "a family member, former friend or long-time acquaintance" of the defendant.  *Rodriguez*, 79 N.Y.2d at 450.  This rule "tracks the federal standard that identification procedures violate due process only if they yield 'unreliable' identifications." *Espinal v. Duncan*, No. 00-CV-4844 (RWS), 2000 WL 1774960, at *3 (S.D.N.Y. Dec. 4, 2000) (citing, *inter alia*, *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977)); *see also Wiggins v. Greiner*, 132 F. App'x 861, 865 n.3 (2d Cir. 2005) (summary order) ("Under New York law, a 'confirmatory identification' from a single photograph does not implicate due process

8

concerns."). Whether Ramos's or Rodriguez's identifications "qualif[y] as [] confirmatory . . . is an issue of state law not relevant to [federal] habeas review." *Wiggins*, 143 F. App'x at 865 n.3.

In any case, the trial court's determination that Ramos's and Rodriguez's identifications were merely confirmatory was not "based on an unreasonable determination of the facts in light of the evidence." 28 U.S.C. § 2254(d). For her part, Ramos witnessed the murder, "recalled the incident," and told the prosecution that "she knew and was familiar with . . . DeJesus and when she watched the video [that] she was familiar with the location and all of the major players in the video." *See* Resp't's App'x A655-56; *see People v. Gee*, 99 N.Y.2d 158, 163-64 (2002) ("Undue suggestiveness lies at the heart of *Wade* jurisprudence, but that concern is not ordinarily implicated when (as here) [a witness] is shown an actual depiction of the [crime] she herself witnessed[,] . . . [since] it was the [actual perpetrator] shown on the videotape (as opposed to a police-acquired photograph or other depiction of defendant)."). As for Ashanty Rodriguez's testimony, Munnelly testified at a *Rodriguez* hearing that Ashanty Rodriguez and DeJesus had gone "to the same high school," had been "friends after high school," "had each other's cell numbers for approximately two years after high school," and "had been close." Resp't's App'x A773. DeJesus cites, and the Court has found, no authority whatsoever to support his argument that Munnelly's testimony at the *Rodriguez* hearing, without corroborating testimony from Rodriguez herself, was insufficient to establish Rodriguez's familiarity with DeJesus and assure the trial court that her identification was merely confirmatory. *See* Pet. 27-30.

Second, DeJesus's challenge to the trial court's admission of historical cell site data and relevant testimony is procedurally barred because he "failed to preserve his challenges to" such evidence. *See DeJesus*, 143 N.Y.S.3d at 358. In any case, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not

9

require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 482 (1976). Federal courts "have approved New York's procedure for litigating Fourth Amendment claims," so DeJesus is not entitled to habeas review of his claim that the prosecution's historical cell site evidence was obtained without a search warrant. *Arnold v. Sup. of Upstate Corr. Facility*, No. 21-CV-10423 (LGS) (SDA), 2022 WL 18542150, at *14 (S.D.N.Y. Sept. 24, 2022). Nor can DeJesus "evade *Stone v. Powell* by labeling [the] claim as a due process one." *Gray v. Lamanna*, No. 17-CV-6324 (BMC), 2021 WL 4844536, at *8 n.4 (E.D.N.Y. Oct. 18, 2021). Furthermore, federal courts have held that testimony that "provides general information on how to interpret cellular phone records and communication with cell tower sites," such as the testimony offered by the prosecution at DeJesus's trial, does not constitute expert opinion and is generally admissible. *See United States v. Fama*, No. 12-CR-186 (WFK), 2012 WL 6102700, at *2 (E.D.N.Y. Dec. 10, 2012) (collecting cases); *see Rubin v. Lamanna*, No. 18-CV-1924 (JFB), 2019 WL 3557693, at *13 (E.D.N.Y. Aug. 5, 2019) (Bianco, J.) (same). Finally, "even assuming *arguendo* that the trial court erroneously permitted . . . testi[mony] regarding the cell site records, . . . the error would not have been so prejudicial as to deprive [DeJesus] of a fundamentally fair trial" given the presence of other compelling evidence of his guilt, including surveillance footage and identification testimony. *Id.*

Finally, DeJesus's challenge to the trial court's admission of graphic photographs of the victim's injuries fails as well. Federal courts have "routinely found no constitutional violation in the admission of autopsy photographs on habeas review." *Perez v. McIntosh*, No. 21-CV-7339 (ER) (GWG), 2022 WL 4229257, at *5 (S.D.N.Y. Sept. 14, 2022). That conclusion is appropriate here as, notwithstanding DeJesus's assertion that the photographs "did nothing" and

10

were "unnecessary," Pet. 42, the photographs "were used for demonstrative purposes so that the medical examiner could properly explain the decedent's injury to the jury," *Francis v. Capra*, No. 18-CV-628 (RA) (RWL), 2019 WL 12026839, at *12 (S.D.N.Y. Aug. 6, 2019) (internal quotation marks omitted), and "to prove [DeJesus's] intent" to kill the victim, which is "an essential element of the charged offense[]," *Perez*, 2022 WL 4229257, at *5; *see also Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998) ("Where the prejudicial evidence is probative of an essential element in the case, its admission does not violate the defendant's right to due process." (cleaned up)). *See* ECF No. 26-2, at 650-52, 671-75.

In short, all of DeJesus's claims with respect to the admission of evidence — Claims One, Two, Three, and Four, *see* Pet. 21-42 — must be and are rejected.

## B. The Ineffective Assistance of Counsel Claim Fails

Next, DeJesus contends, as he did in his CPL § 440.10 motion, that he received ineffective assistance of counsel because his trial counsel failed to "investigate and present [DeJesus's] alibi"; "interview potential alibi witnesses"; "investigate the threats that [DeJesus] received the day following the shooting that led him to leave the town after the incident"; "investigate and challenge the evidence of the wallet and its contents"; "investigate the . . . motivation for Colon to falsely identify [DeJesus] as the shooter"; "argue the inconsistency in the description of [the] shooter's clothing given by the 911 caller and the video evidence presented by prosecution"; "adequately object to the cell tower evidence"; "secure Colon's testimony or to request a missing witness charge"; and "adequately object to the inconsistent testimony of various prosecution witnesses and to request an interested witness charge." Pet. 46-47. These contentions, however, are doomed by the New York Supreme Court's denial of his CPL § 440.10 motion and this Court's deferential standard of review. The state court found, based on its

review of the trial record and the new evidence submitted by DeJesus, that any evidentiary inconsistency would have been apparent to the jury, that trial counsel did maintain a "continuing objection" to the testimony about historical cell site data, and that the "failure to request a missing witness charge or to vigorously challenge Detective Munnelly's testimony regarding the wallet [was] not central to the question of the defendant's guilt or innocence." Resp't's App'x A575-87. It also concluded that Classen's affidavit, submitted as a part of DeJesus's CPL § 440.10 motion, raising an alibi defense for the first time, did not support an ineffective assistance of counsel claim because it had "not [been] mentioned to defense counsel." *Id.* at A586. At a minimum, given the deference owed to the state court's factual findings, not to mention the deference owed to trial counsel, the Court cannot say that the state court's conclusions were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or were "based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d); *see, e.g.*, *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) ("The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable — a substantially higher threshold." (internal quotation marks omitted)); *Harrington*, 562 U.S. at 105 ("The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." (cleaned up)). It follows that DeJesus's ineffective assistance claim — the supporting arguments for which are carbon copies of the ones made in the opening brief in DeJesus's CPL § 440.10 motion, *compare* Pet. 45-60 *with* Resp't's App'x A511-40 — must be and is rejected.[2]

---

[2] In his reply memorandum of law, DeJesus argues that Respondent's "speculation" that "trial counsel had no means to introduce the alleged threats [that he had received after the

**C. The Prosecutorial Misconduct Claim Fails**

DeJesus's prosecutorial misconduct claim is similarly without merit. DeJesus argues, as he did in his CPL § 440.10 motion, that Detective Munnelly "presented false testimony by claiming that the wallet [had been] recovered from [DeJesus's] person during his arrest" even though "the wallet did not belong to [DeJesus]" and "it belonged instead to [his] half-brother, Classen," and that the prosecution failed to correct Detective Munnelly's testimony despite knowledge of its falsity. Pet. 66.[3] DeJesus, however, submits "no proof, only speculation, that the prosecution presented false evidence or perjured testimony." *McBride v. Coveny*, No. 19-CV-200 (RA), 2020 WL 4194895, at *11 (S.D.N.Y. July 21, 2020). Indeed, there is "no indication" that "the prosecution was aware of [any] falsity" in Detective Munnelly's testimony "prior to introducing" it. *Williams v. McGuinness*, No. 22-CV-3226 (NRM), 2023 WL 6291575, at *18 (E.D.N.Y. Sept. 27, 2023). In such cases, "it is not unreasonable to reject" a claim of prosecutorial misconduct, as the CPL § 440.10 court did here. *McBride*, 2020 WL 4194895 at *11; *see also Carrino v. Lee*, No. 21-CV-5909 (VB) (PED), 2023 WL 4304799, at *18 (S.D.N.Y. Jan. 31, 2023) (explaining that, for a prosecutorial misconduct claim, a petitioner must establish "by a preponderance of the evidence, that the witness committed perjury" *and* that "the prosecution knew or should have known of the perjury"); *Proctor v. McCarthy*, No. 19-CV-2988

---

shooting] into evidence" warrants an evidentiary hearing. ECF No. 30 ("Pet'r's Reply"), at 15. But the relevant question for this Court is whether the CPL § 440.10 court's rejection of that argument is "contrary to, or involved an unreasonable application of, clearly established Federal law" — which it is not — rather than the underlying question of whether any such "speculation" is in fact supported by evidence. *See* 28 U.S.C. § 2254(d).

[3]     Contrary to Respondent's argument, DeJesus's prosecutorial misconduct claim appears to be based solely on the alleged failure to correct Detective Munnelly's testimony and does not encompass "the prosecutor's use of the autopsy photographs" or the "remarks made by the prosecutor during summation." Resp't's Mem. 58-59; *see* Pet. 64-68.

(GBD) (JLC), 2020 WL 1149660, at *17 (S.D.N.Y. Mar. 10, 2020) ("Mere speculation . . . is not sufficient to support a claim based on the knowing presentation of false evidence."). In any event, DeJesus fails to show a "reasonable likelihood that the perjured testimony could have affected the judgment of the jury." *Carrino*, 2023 WL 4304799, at *18. Indeed, as the CPL § 440.10 court held, neither the prosecution's wallet evidence nor Detective Munnelly's testimony about where and how it was recovered was "central to the question of defendant's guilt or innocence." Resp't's App'x A587. Accordingly, DeJesus's prosecutorial misconduct claim must be and is rejected as well.

### D. The Actual Innocence Claim Fails

Next, to the extent DeJesus's freestanding claim of "actual innocence" is even legally viable, *see McQuiggin v. Perkins*, 569 U.S. 383, 391-92 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence."); *Jimenez v. Stanford*, 96 F.4th 164, 170 (2d Cir. 2024), it fails on the merits. A claim of actual innocence must be both "credible" and "compelling." *Rivas v. Fischer,* 687 F.3d 514, 541 (2d Cir. 2012); *see also McQuiggin,* 569 U.S. at 392. For a claim to be "credible," it must be supported by "*new* reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup v. Delo,* 513 U.S. 298, 324 (1995) (emphasis added); *see also Rivas,* 687 F.3d at 541. And for a claim to be "compelling," a petitioner must demonstrate that "more likely than not, in light of the *new* evidence, no reasonable juror would find him guilty beyond a reasonable doubt — or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt." *House v. Bell,* 547 U.S. 518, 538 (2006) (emphasis added); *see also Rivas,* 687 F.3d at 541. DeJesus's claim of actual innocence falls far short of these tough standards, as

he presents no "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence . . . that was not presented at trial." *Rivas,* 687 F.3d at 541.  Instead, seven years "after his conviction, with no explanation for the delay, . . . he presents [two] affidavits that simply do not include the kind of overwhelmingly exculpatory evidence that would allow the Court to find it more likely than not that 'no reasonable juror would have found [him] guilty beyond a reasonable doubt.'"  *Whitfield v. Graham*, No. 10-CV-3038 (RJS) (RLE), 2017 WL 4060571, at *5 (S.D.N.Y. Sept. 13, 2017) (quoting *House*, 547 U.S. 518 at 536-37); *see* Resp't's Mem. 19.  Furthermore, the Court owes "substantial deference," *Carrion v. McIntosh*, No. 23-CV-7374 (JMF), 2024 WL 1587317, at *3 (S.D.N.Y. Apr. 11, 2024), to the CPL § 440.10 court's determinations that DeJesus "fail[ed] to demonstrate why the alibi information could not have been discovered before trial by the exercise of due diligence" given that Classen had been "intimately involved with the case from its inception to the resolution" and that, in any case, the affidavit "lacks any indicia of credibility," *see* Resp't's App'x A583-84.  Accordingly, DeJesus's freestanding claim of actual innocence must be and is denied.

### E.  The Excessive Sentence Claim Fails

Finally, DeJesus challenges his sentence as unconstitutionally excessive.  Pet. 42-45. Even though DeJesus argued on direct appeal that his "maximum sentence of 25 years to life is excessive," Resp't's App'x A84-85, he did not argue that the "sentence violated any constitutional right or that the trial court erred," *Scott v. James*, No. 20-CV-7809 (ALC), 2023 WL 5048237, at *6 (S.D.N.Y. Aug. 8, 2023).  As a result, DeJesus's excessive-sentence claim is unexhausted.  "[B]ecause no state forum remains for this claim, [it] is deemed exhausted and procedurally barred."  *Green v. Legoney*, No. 09-CV-0747 (SAS), 2012 WL 5278465, at *8 (S.D.N.Y. Oct. 25, 2012).  In any event, the claim fails on the merits.  "It is well established that

an excessive sentence claim may not provide grounds for [federal] habeas corpus relief where a petitioner's sentence is within the range prescribed by state law." *Morales v. Collado*, No. 21-CV-3177 (JMF), 2023 WL 1993334, at *2 (S.D.N.Y., Feb. 14, 2023) (cleaned up); *see also Keita v. Fields*, No. 20-CV-6154 (JMF), 2020 WL 6647288, at *2 (S.D.N.Y. Nov. 12, 2020) (denying an excessive sentence claim where the challenged sentence was within the range prescribed by state law). That is the case here, as DeJesus's "sentence of twenty-five years' to life imprisonment on the second-degree murder count . . . was within the range permitted . . . by New York law." *Velez-Garriga v. Bell*, No. 20-CF-5911 (DC), 2024 WL 759294, at *11 (E.D.N.Y. Feb. 23, 2024) (Chin, J.); *see also* N.Y. Penal L. § 70.00(3)(a)(i). Accordingly, DeJesus's sentence cannot support federal habeas relief. *Morales*, 2023 WL 1993334, at *2.

## CONCLUSION

For the reasons stated above, DeJesus's Petition must be and is DISMISSED. As DeJesus has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c)(2); *see also, e.g.*, *Matthews v. United States*, 682 F.3d 180, 185 (2d Cir. 2012). In addition, this Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Opinion and Order would not be taken in good faith, and *in forma pauperis* status is thus denied. *See, e.g.*, *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). The Clerk of Court is directed to close this case.

SO ORDERED.

Dated: January 2, 2025  
New York, New York

_____  
JESSE M. FURMAN  
United States District Judge